**SO ORDERED.**

**SIGNED this 10th day of August, 2020.**



_____
Dale L. Somers
United States Chief Bankruptcy Judge
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

Robert Earl Dear,

Case No. 20-10738-13

Debtor.

## Order Granting Motion to Impose Automatic Stay, With Conditions

    Debtor Robert Earl Dear filed a third Chapter 13 bankruptcy petition after his prior two Chapter 13 cases were dismissed within the last year. The automatic stay—the stalwart backbone of the Bankruptcy Code—is not imposed upon filing of a bankruptcy petition when a debtor has had two or more cases pending but dismissed within the previous year. Debtor quickly after filing his petition filed a motion seeking imposition of the automatic

stay,[1] and Creditor Tennant Real Estate opposes Debtor's motion.[2] Under 11 U.S.C. § 362(c)(4)(D),[3] Debtor must rebut a presumption that his case is not filed in good faith by clear and convincing evidence to qualify for imposition of the automatic stay in his case.

After hearing evidence from the parties, the Court concludes that Debtor's Chapter 13 petition was filed in good faith and that the presumption of bad faith filing has been rebutted by clear and convincing evidence. The stay of § 362(a) is hereby imposed as to all creditors, subject to the condition that Tennant Real Estate will be granted relief from the stay if Debtor fails to timely make two consecutive Chapter 13 Plan payments, as expressed in more detail herein.

## I. Findings of Fact and Procedural History

On September 29, 2013, Debtor and Tennant Real Estate entered into an installment sales contract, whereby Debtor agreed to pay Tennant Real Estate a $1500 down payment and then $36,500 via monthly payments of $460 over 180 months for the purchase of real property at 1014 S. Waverly, in

---

[1] Debtor titled his pleading as a motion seeking extension of the automatic stay, but acknowledged at trial that he was seeking imposition, not extension. The Court therefore refers herein to the motion as one seeking imposition of the automatic stay.
[2] Debtor appears by Jeffrey L. Willis. Tennant Real Estate appears by Sarah Newell.
[3] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

Wichita, Kansas. Debtor lived in the property for a number of years and made substantial improvements to the property, but in recent years has been using the property as a rental unit, while he lives elsewhere.

Debtor has recently filed two Chapter 13 bankruptcy petitions, prior to his current case. Debtor's first Chapter 13 bankruptcy petition was filed about two years ago, on July 23, 2018.[4] Debtor's Schedule A reported two pieces of real estate: his residence at 434 Rolling Acres, in Valley Center, Kansas, valued at $190,000, and the real property at 1014 S. Waverly, in Wichita, Kansas, valued at $28,000. Debtor's Valley Center residence had a debt of $174,000, and the Wichita real estate was indebted for $28,400. Debtor's only other secured debt was to Capital One for a 2012 Suzuki vehicle, with a $7000 claim, but valued at only $2000, and to Valley State Bank for a 2007 Buick vehicle, with a $3300 claim, but valued at only $2000. Debtor owed both the Internal Revenue Service (IRS) and the Kansas Department of Revenue (KDoR), and also reported $226,631 in unsecured debt.

At filing of his July 23, 2018 Chapter 13 bankruptcy petition, Debtor reported net wages of $4263 per month, stemming from his employment as a truck driver for Food Liner. Debtor also reported $400 monthly income from

---

[4] Case No. 18-11427-13.

rental property, for a total combined monthly net income of $4663. Debtor's Schedule J showed he had one dependent, a sixteen-year-old daughter, and expenses of $1841, leaving $2822 for a proposed monthly plan payment of $2816.67.

Multiple creditors and the Chapter 13 Trustee objected to confirmation of Debtor's proposed plan, and several creditors also sought stay relief. Eventually, a third amended plan was confirmed, on September 26, 2019, requiring Debtor to make monthly plan payments of $3100.

The docket in Debtor's first bankruptcy case was not quiet for long. The next month, on October 24, 2019, the Chapter 13 Trustee filed a motion to dismiss Debtor's case, arguing that Debtor was $8364 in arrears, with his last payment made on September 24, 2019. Debtor objected, stating that he had changed employers, and Debtor's counsel indicated a motion to modify and an amended budget would be filed by January 9, 2020, or the case could be dismissed without further notice. Debtor failed to file a motion to modify or an amended budget, and his case was dismissed on January 14, 2020.

About five weeks later, on February 22, 2020, Debtor filed his second Chapter 13 bankruptcy petition, with the same counsel as used in his first.[5] Debtor's petition did not contain any Schedules, his Statement of Financial

---

[5] Case No. 20-10219-13.

Affairs, or his Form 22-C, and Debtor was given an April 8, 2020 deadline to file the missing document or his case would be dismissed. On that deadline, new counsel entered his appearance for Debtor, and the missing documents were filed. Debtor's Schedule A still listed both pieces of real estate, but now valued his residence at $196,200 and the Wichita real property at $64,400, with debts of $187,842.12 and $30,490.38, respectively. Oddly, Debtor now claimed his 2012 Suzuki was valued at $4000, with a $7627.14 claim. Debtor no longer listed the 2007 Buick. Debtor still owed the IRS and the KDoR, and his unsecured debt had increased to $231,035.79.

Debtor's Statement of Financial Affairs indicated he had $1200 in rental income from January 1, 2020 to his petition filing on February 22, 2020. The Statement of Financial Affairs also revealed that Tennant Real Estate had filed a collection suit against Debtor in the interim between his first and second bankruptcies.

Debtor's Schedule I revealed recent employment as a driver for Medline LLC. Debtor reported net wages of $2608.45, $600 rental income, and $447 from his disabled son's Social Security income per month, for a total combined monthly income of $3655.45. Debtor noted, however, that he recently received a pay increase that would raise his monthly average income to $4684.33. Debtor's Schedule J showed two dependents: a then seventeen-year-old daughter, and a twenty-one-year-old disabled son. Expenses listed

5

Case 20-10738    Doc# 53    Filed 08/10/20    Page 5 of 16

totaled $1921.97, leaving only $1773.48 to make a proposed monthly plan payment of $3100.

Unfortunately, Debtor's second Chapter 13 bankruptcy did not proceed much farther than that. On April 23, 2020, Debtor filed a motion to dismiss his case, noting that his original counsel had not filed a motion to extend the automatic stay upon the filing of his case, and seeking dismissal so Debtor could refile and seek application of the automatic stay. Debtor's second case was ultimately dismissed on May 15, 2020.

The next month, on June 11, 2020, Debtor filed his third Chapter 13 bankruptcy petition, as captioned above. Both pieces of real estate were listed on Schedule A at the same values as in Debtor's second bankruptcy, with the same claims against them. Debtor again scheduled his 2012 Suzuki with a $4000 value and a debt of $7627.14. Debtor's Statement of Financial Affairs claimed rental income of $3600 from January 1, 2020 to his petition filing on June 11, 2020. Again, Debtor scheduled his debt to the IRS and the KDoR, and listed the same amount of unsecured debt.[6]

Debtor's Schedule I and J at filing of his current case showed only a slightly improved picture. Debtor's take home pay from working was

---

[6] At trial, Debtor testified that his 2019 tax refund of approximately $2800 was held "by the IRS," which he assumes was because of his priority tax debt. Debtor claimed a total owed to the IRS of $5983.51 and to the KDoR of $2044.06, so the 2019 refund presumably reduced those numbers.

6

$3760.50, and when combined with monthly rental income of $600 and his disabled son's income of $447, his combined monthly income was $4807.50. Debtor calculated his expenses to be $1949.37, leaving $2858.13 to make a monthly proposed plan payment of $3100. In other words, Debtor's Schedules and proposed plan at filing were patently not feasible.

At trial on Debtor's motion to impose the automatic stay, the parties stipulated that Debtor's first attorney did not perform as he should have when filing Debtor's second case. For example, Debtor did not realize his second bankruptcy was missing documents until it was almost too late. Debtor also did not realize his counsel had not filed the motion to extend the automatic stay in his second case until discussing the issue with new counsel. Regarding his tenant in the rental property in Wichita, Debtor acknowledged there was no end date on the parties' rental agreement, and that he did not get Tennant Real Estate's approval for the current tenant, but testified that he had consistently had a tenant in the house since February 2020.

Debtor's current plan proposes to pay Tennant Real Estate in full over the five-year life of the plan. Debtor states he is eager to pay off this creditor and has no intent to take advantage of the creditor. Debtor testified that he did not intend to file multiple bankruptcies, and that he would still be in his first bankruptcy if he had not lost his job with Food Liner.

The parties stipulated to the admissibility of a Tennant Real Estate calculation of the plan payment that will be required from Debtor in this current Chapter 13 bankruptcy case based on the claims filed and the objections to confirmation filed. Debtor's plan payment will need to be about $200 higher than proposed in his plan—$3297 per month—to complete his plan payments in five years. Regarding his current monthly income, Debtor testified that has been working eight to ten hours of overtime each week lately, but no specifics were given about how this impacted his take home pay. Debtor also testified that his son's Social Security income is $460 per month, not the $447 scheduled. Finally, Debtor testified that the correct monthly rent he was receiving was $650 per month, not $600. Debtor indicated that if his plan payment was increased, he could cut expenses and make his budget work to meet that increase.

After trial, Debtor filed an amended plan and amended Schedule I and J. The amended plan proposes a plan payment of $3396 per month for five years and would pay Tennant Real Estate in its entirety over that time. Debtor's Schedule I shows monthly take home pay of $3760.50, plus $650 monthly rental income, and $455 from Debtor's son's Social Security income. Debtor's expenses have been reduced to $1470.37, leaving $3395.13 to make Debtor's monthly plan payment. Specifically, Debtor's most recent Schedule J reduces monthly expenses for homeowner's association dues (from $88 to

8

$29), food and housekeeping supplies (from $650 to $500), childcare and children's education costs (from $50 to $0), clothing, laundry, and dry cleaning (from $100 to $25), transportation (from $270 to $125), and entertainment (from $100 to $0). Debtor's Schedule J also includes a note, that "Debtor's Mother supplies meals for [the] family." The only increased monthly expense on the Schedule J was for personal care products, which increased from $50 to $150.

## II. Conclusions of Law

Contested matters concerning the automatic stay are core matters under 28 U.S.C. § 157(b)(2)(G) over which this Court may exercise subject matter jurisdiction.[7]

### A. § 362(c)(3)-(c)(4): Extension and Imposition of the Automatic Stay After Repeat Filing

Generally, when a debtor files a bankruptcy petition, § 362 of the Code "automatically stays the commencement or continuation of a judicial proceeding against the debtor that was or could have been initiated before

---

[7] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1, *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

9

the filing of a bankruptcy petition."[8] "The stay protects debtors from harassment and also ensures that the debtor's assets can be distributed in an orderly fashion, thus preserving the interests of the creditors as a group."[9] But, when a debtor has had prior, recently pending Chapter 7, 11, or 13 bankruptcy cases, the general rules regarding the automatic stay are statutorily changed.

Under § 362(c)(3)(A), if a debtor has had a case pending but dismissed within the year of filing their current case, the automatic stay terminates on the thirtieth day after the filing of the later case. The debtor may motion for extension of the stay, and the court may extend the stay, if the debtor demonstrates the later case was filed in good faith.[10] A presumption that the case is not filed in good faith arises if certain factors are present, and that presumption must be overcome by "clear and convincing evidence to the

---

[8] *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 496 (10th Cir. 2011) (citing 11 U.S.C. § 362(a)(1) ("a petition . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title")).
[9] *Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1083 (10th Cir. 2009) (internal quotation omitted). *See also Rushton v. Bank of Utah (In re C.W. Mining Co.)*, 477 B.R. 176, 191 (10th Cir. BAP 2012) ("The automatic stay is intended to allow the debtor to attempt to repay his debts or reorganize his financial affairs by virtue of a respite from demanding creditors. It also protects creditors by prohibiting the dismembering of the bankruptcy estate. Thus, the automatic stay maintains the status quo so as to ensure that there is an orderly distribution of estate assets.").
[10] § 362(c)(3)(B).

contrary."[11] These factors were not present in Debtor's second case, so if a motion had been filed, there would not have been a presumption of bad faith.

The situation is more difficult when a debtor has had multiple cases pending but dismissed within the prior year. Under § 362(c)(4)(A), if a debtor has had two prior cases dismissed within the year of filing their current case, the automatic stay does not go into effect at filing unless the debtor files a motion seeking imposition of the stay and the court enters an order imposing the stay because the debtor has demonstrated the case was filed in good faith. Under § 362(c)(4)(D), a case is presumptively not filed in good faith as to all creditors if two or more cases were pending within the last year or if "there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the most previous case . . . or any other reason to conclude that the later case will be concluded . . . with a confirmed plan that will be fully performed." If the presumption arises that the case is not filed in good faith, then a debtor has to rebut that presumption by clear and convincing evidence to the contrary, per § 362(c)(4)(D).

"When the presumption arises, it is as though evidence has already been presented establishing that the case was not filed in good faith."[12]

---

[11] § 362(c)(3)(C).
[12] *In re Montoya*, 333 B.R. 449, 457 (Bankr. D. Utah 2005).

Good faith is a totality of the circumstances consideration for the court.[13] In Chapter 13 cases, courts generally use the good faith filing standards applicable to conversion or dismissal under § 1307.[14] Under those standards, the good faith, totality of the circumstances test focuses on: "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors."[15] Section 362(c) requires courts to look at good faith "from the creditors' perspective."[16] Clear and convincing evidence is a high standard to meet: "Evidence is clear if it is certain,

---

[13] *In re Galanis*, 334 B.R. 685, 691-92 (Bankr. D. Utah 2005); *see also In re Tomasini*, 339 B.R. 773, 777 (Bankr. D. Utah 2006) (citing *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983) and *Gier v. Farmers State Bank of Lucas (In re Gier)*, 986 F.2d 1326 (10th Cir. 1993)).

[14] *In re Montoya*, 333 B.R. at 457; *In re Galanis*, 334 B.R. at 688 ("The Court determined that a debtor's good faith under § 362(c)(3) is governed by a totality of the circumstances test, and looked to factors historically used to determine a debtor's good faith under § 1307(c)."). In *Galanis*, the bankruptcy court modified the § 1307(c) test from *Gier* a bit, and looked at: "1) the timing of the petition; 2) how the debt(s) arose; 3) the debtor's motive in filing the petition; 4) how the debtor's actions affected creditors; 5) why the debtor's prior case was dismissed; 6) the likelihood that the debtor will have a steady income throughout the bankruptcy case, and will be able to properly fund a plan; and 7) whether the Trustee or creditors object to the debtor's motion." 384 B.R. at 693.

[15] *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326, 1329 (10th Cir. 1993).

[16] *In re Montoya*, 333 B.R. at 460.

unambiguous, and plain to the understanding, and it is convincing if it is reasonable and persuasive enough to cause the trier of facts to believe it."[17]

### B. Debtor Has Carried His Burden to Rebut the Presumption Against Him by Clear and Convincing Evidence

Ultimately, the Court concludes that Debtor has shown clear and convincing evidence to rebut the presumption that his bankruptcy petition was not filed in good faith. First and foremost, the Court believes Debtor's fate has been negatively impacted by his prior counsel. Did Debtor's first bankruptcy case have to be dismissed? Debtor was out of work for a couple of months, and it is certainly possible that Debtor could have made other choices to make his first bankruptcy work. Second, it is undisputed that Debtor's then counsel filed his second bankruptcy without filing a motion to extend the automatic stay. Once Debtor retained new counsel and realized the precariousness of his situation, Debtor was forced to dismiss and refile. But again, if Debtor's bankruptcy counsel had acted differently, the dismissal of Debtor's second bankruptcy petition would not have been necessary. Debtor has retained competent counsel who has helped him attempt to right the ship and seems to be on a good course.

In addition, the value of both Debtor's residence and the Wichita real estate have increased since his first bankruptcy, and Debtor is able to charge

---

[17] *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1194 (10th Cir. 2002).

13

significantly more in monthly rent ($400 per month in first case and now $650 per month). This is an undeniable boost to Debtor's budget. Debtor's take home pay has been pretty consistent at his "new" job, which Debtor has had in place since late 2019. Debtor has also recently been working overtime and receiving hazard pay. Certainly, Debtor's income situation has improved.

Finally, Debtor is eager to pay off this creditor and testified he is not trying to take advantage of Tennant Real Estate. The timing of Debtor's subsequent bankruptcy petitions does not appear tied to this creditor and there is no particularized harm to this creditor that is different than any other creditor impacted by a debtor filing a bankruptcy petition. Debtor was forthcoming at trial.

That said, the Court acknowledges there are factors weighing against Debtor. Yes, Debtor filed an amended budget after trial, showing the ability to finance plan payments. But Debtor's monthly budget is very tight. There is almost no room for error. The only creditor objecting to imposition of the automatic stay—Tennant Real Estate—apparently has not consistently been paid. At Debtor's first filing on July 23, 2018, Debtor stated that he owed Tennant Real Estate $28,400, and the creditor filed a claim for $30,490.38. More recently, Debtor also stated the claim on the property as $30,490.38, so he certainly did not pay much, if anything in the interim. No proof of claim by

Tennant Real estate has yet been filed in Debtor's current case, although Debtor's most recently amended plan estimates the claim at $35,109.77.

Weighing all these considerations, the Court concludes that Debtor has carried his burden to rebut the presumption that his case was not filed in good faith by clear and convincing evidence. The imposition of the automatic stay under § 362(c)(4), however, may be "subject to such conditions or limitations as the court may impose." Under the circumstances, the Court finds that the imposition of the stay as to Tennant Real Estate should be conditioned upon Debtor's Chapter 13 plan being confirmed and upon Debtor being current on his Chapter 13 payments to the Chapter 13 Trustee. If the Chapter 13 Trustee confirms to Tennant Real Estate that Debtor has not made two successive payments within fourteen days of their due date, Tennant Real Estate is authorized to file a notice of such failure and submit to the Court, with copy to Debtor's counsel, an Order Granting Relief from the Automatic Stay. The Court concludes that this condition on the imposition of the automatic stay as to Tennant Real Estate in particular will ensure that this creditor's interests are protected. The creditor is protected by a large equity cushion in the property, and continuing in a Chapter 13 plan will ensure it receives a steady stream of payments.

## III. Conclusion

The Court grants Debtor's motion for imposition of the automatic stay with conditions, as detailed more fully above. Debtor's motion to reconsider the Court's prior, oral denial of the requested relief is granted.[18]

**It is so Ordered.**

### ###

---

[18] Doc. 28. As discussed above, shortly after filing his current Chapter 13 bankruptcy petition, Debtor filed his motion concerning the automatic stay. Doc. 17. Tennant Real Estate opposed Debtor's motion, Doc. 26, and the matter was set for telephonic hearing. At that hearing, Debtor's counsel apparently had technical difficulties, so could not be heard when the Court asked for appearances. *See* Doc. 28. The Court as a result denied Debtor's motion. Doc. 27. Debtor then filed a motion to reconsider, Doc. 28, asking the Court to reconsider the denial due to the communication problem. The Court heard from the parties and continued the matter to the evidentiary hearing discussed herein. Doc. 33.